IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

IVAN BOSTON,

        Petitioner,

v.                               CIVIL ACTION NO. 2:12cv75
                                     (Judge Bailey)

RUSSELL A. PERDUE,

        Respondent.

## REPORT AND RECOMMENDATION

### I. BACKGROUND

On November 13, 2012, the *pro se* petitioner, an inmate at FCI Gilmer in Glenville, West Virginia, filed an Application for Habeas Corpus Pursuant to 28 U.S.C. § 2241, in which he seeks an order expunging his disciplinary record, restoration of his Good Time Credits, commissary and visitation privileges. On November 19, 2012, the petitioner paid the required $5.00 filing fee, and on November 29, 2012, he filed his petition on the court-approved form. By Order entered November 30, 2012, the court directed the respondent to show cause why the petition should not be granted. On December 13, 2012, the respondent filed a Motion to Dismiss, or in the alternative, Motion for Summary Judgment. On December 17, 2012, a Roseboro Notice was issued and on January 7, 2013, the petitioner filed a response.

### II. FACTS

The petitioner is a federal inmate committed to the custody of the BOP serving a 120-month term of imprisonment to be followed by a 3-year term of supervised release. His sentence stems

from a jury verdict finding him guilty of being a felon in possession of a firearm. His judgment was entered on June 20, 2012. See 1-11cr-00107-DLI-1 available on PACER. The petitioner is currently designated to FCI Gilmer and his projected release date is November 6, 2019.[1]

On December 7, 2012, while housed in the Metropolitan Detention Center, Brooklyn, New York, the petitioner provided a urine sample to institution staff. On December 12, 2011, the National Toxicology Laboratories provided the institution with the results of that test. The results revealed that the petitioner tested positive marijuana. A check with the institution medical department revealed that the petitioner was not on any prescribed medication that would make him test positive on the urinalysis. As a result of the positive drug test, the petitioner received an Incident Report charging him with a violation of prohibited Act Code 112, Use of Any Narcotics. (Doc. 10-4).

A copy of the Incident Report was provided to the petitioner on December 12, 2011.(Doc. 10-4, p.1). A staff member charged with conducting an investigation into the incident advised petitioner of his rights on that same date. (Doc. 10-4, p.2). The petitioner requested to see the lab report and acknowledged that it was his signature on the chain of custody form. (Id.). The investigator noted that based upon the officer's account and supporting documentation, the report was true and the charges were warranted. (Id.).

The petitioner was provided a Notice of Discipline Hearing Before the DHO form on December 15, 2011. (Doc. 10-5). The form notified the petitioner that his hearing date would be held on the next available date. The petitioner indicated he did not wish to have a staff representative and

---

[1] Although the respondent has provided no information regarding the petitioner's current incarceration location or release date, the BOP website provides said information. See www.bop.gov.

did not wish to have any witnesses. (Id.). The petitioner was also provided a form advising him of his rights at the DHO hearing. (Doc. 10-6).

A UDC hearing was held on December 15, 2011. (Doc. 10-4, p.1). The petitioner made no comment at the UDC hearing and the UDC referred the matter to the DHO based upon the severity of the offense. (Id.). The incident report was thereafter forwarded to be DHO for further processing.

On December 21, 2011, a DHO hearing was conducted. (Docs. 10-2, 10-3). The DHO noted that he relied upon the written report from staff that indicated a staff member received a positive urinalysis result from the National Toxicology Laboratories on the petitioner's urine sample. The DHO also noted that medical staff at the institution verified that the petitioner was not on any prescription medication that result in a positive drug test for marijuana. The DHO also considered the petitioner's statement that he was around the drug, but found the greater weight of the evidence supported a finding that the petitioner committed the prohibited act. (Id.). Other documentary evidence replied upon included the Chain of Custody BOP0001110054, National Toxicology Report for the petitioner, and a memorandum from the staff pharmacist. (Id., Doc. 10-7).

The DHO disallowed 40 days good conduct time, in addition to other sanctions. The DHO noted that the sanctions were for the use of illegal drugs because the effects could lead to other serious offenses. It was noted that inmates under the influence posed a serious management problem and could lead to disruptive behavior. It was also noted that this type of behavior disrupts the orderly running of the institution and staff's ability to perform her assigned duties. The sanctions were imposed to deter the petitioner's future conduct. (Docs. 10-2. 10-3).

The petitioner was provided a copy of the final DHO action on January 5, 2012. (Doc. 10-2). It should be noted that during administrative remedy process it was discovered that a typographical error was made by the DHO in Section V., related to the specific dates. As noted in the Regional

Office appeal response, those particular dates were corrected in an amended DHO report. (10-8). On December 6, 2012, the petitioner was provided copies of the Amended DHO report that corrected only a typographical errors related to the date on in the second paragraph of Section V.(Doc.10-4).

### III, CONTENTIONS OF THE PARTIES

The petitioner does not deny that he committed the prohibited act as charged nor does he allege any violation of his due process rights during the disciplinary proceeding. Instead, he alleges a due process violation based on the fact that the BOP Central Office never responded to his administrative remedy wherein he appealed the disciplinary action.[2]

In response to the petition, the respondent argues that there is no due process right to an administrative remedy program. In addition, the respondent notes that the petitioner received all of the due process afforded by the Supreme Court in Wolff v. McDonnell, 418 U.S. 539 (1974).

In his reply to the response, the petitioner maintains that under the Administrative Procedure Act, the BOP had an obligation to answer his appeal in a timely fashion under program statement 542.18. The petitioner maintains that failure to do so was a direct violation of such procedure act and program statement. Petitioner argues that failure to respond to his administrative appeal " is deemed abandoned," and therefore, "default is warranted under Program Statement § 542.18."

### IV. STANDARD OF REVIEW

**A. Motion to Dismiss**

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses."

---

[2] At the time the petitioner initiated this action, he may not have received the response to his Central Office Appeal. The response is dated October 26, 2012, and there is no indication when it was mailed to, or received by, the petitioner.

Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir.1992) (citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. Mylan Labs, Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir.1993); see also Martin, 980 F.2d at 952.

The Federal Rules of Civil Procedure "require only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). Courts long have cited the "rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [a] claim which would entitle him to relief." Conley, 355 U.S. at 45-46. In Twombly, the United States Supreme Court noted that a complaint need not assert "detailed factual allegations," but must contain more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Conley, 550 U.S. at 555 (citations omitted). Thus, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," id. (citations omitted), to one that is "plausible on its face," id. at 570, rather than merely "conceivable." Id. Therefore, in order for a complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." Bass v. E.I.DuPont de Nemours & Co., 324 F.3d 761, 765 (4th Cir.2003) (citing Dickson v. Microsoft Corp., 309 F.3d 193, 213 (4th Cir.2002); Iodice v. United States, 289 F.3d 279, 281 (4th Cir.2002)). In so doing, the complaint must meet a "plausibility" standard, instituted by the Supreme Court in Ashcroft v. Iqbal, where it held that a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the

5

misconduct alleged." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009). Thus, a well-pleaded complaint must offer more than "a sheer possibility that a defendant has acted unlawfully" in order to meet the plausibility standard and survive dismissal for failure to state a claim. Id.

### B. SUMMARY JUDGEMENT

The Supreme Court has recognized the appropriateness of Rule 56 summary judgment motions in habeas cases. See Blackledge v. Allison, 431 U.S. 63, 80 91977). So too, has the Fourth Circuit Court of Appeals. Maynard v. Dixon, 943 F.2d 407 (4th Cir. 1991). Pursuant to Rule 56c of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

Motions for summary judgment impose a difficult standard on the moving party; for it must be obvious that no rational trier of fact could find for the nonmoving party. Miller v. Federal Deposit Ins. Corp., 906 F.2d 972, 974 (4th Cir. 1990). However, the "mere existence of a scintilla of evidence" favoring the nonmoving party will not prevent the entry of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242-252 (1986). To withstand such a motion, the nonmoving party must offer evidence from which a "fair-minded jury could return a verdict for the [party]." Id. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987). Such evidence must consist of facts which are material, meaning that they create fair doubt rather than encourage mere speculation. Anderson, 477 U.S. at 248. It is well recognized that any permissible inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. Matsushita Elec. Industrial Co. V. Zenith Radio Corp., 475 U.S. 574, 587-88 1986).

## V. ANALYSIS

### A. Administrative Remedy Program

As previously noted, the petitioner's only argument in support of his request for relief is that his due process rights were violated because he did not receive a timely response from the BOP Central Office on his administrative remedy. The undersigned can discern no constitutional basis for the petitioner's argument. However, assuming that it was advanced on the theory that an inmate cannot be deprived of his liberty without due process of law, it fails for two reasons.

First, a timely response to an appeal to the Central Office is not constitutionally protected. See Adams v. Rice, 40 F.3d 72, 74 (4th Cir. 1994)("As other circuits have recognized, there is no constitutional right to participate in grievance proceedings."); See also Flick v. Alba, 932 F.2d 728, 729 (8th Cir. 1991) (finding in a Bivens-type complaint against the case manager coordinator and warden of Federal Medical Center in Rochester, Minnesota, that federal regulations providing for administrative remedy procedure do no not create a liberty interest in access to that procedure (*per curiam*)(citing Azeez v. DeRobertis, 568 F.Supp. 8, 10 (D.C.Ill., 1982)); Rojas v. Driver, No. 5:06cv88, 2007 WL 2789471, *4 (N.D.W.Va, September 24, 2007)(finding "the Constitution creates no entitlement to grievance procedures..."and prisoner is 'constitutionally entitled to the procedures enumerated in Wolff and no more")(citation omitted) *aff'd*, 267 Fed. Appx. 302, 2008 WL 553108 (4th Cir. 2008)

Moreover, even if the failure of the Central Office to respond timely to his appeal triggered protections under the due process clause, the petitioner can show no prejudice as the result of the late response. Although due process is flexible and the protections afforded by due process are dependent on a given set of circumstances, Morrissey v. Brewer, 408 U.S. 471, 481 (1972), due process claims generally require either that the particular conduct is inherently prejudicial, or that the denial of due

7

process causes actual or identifiable prejudice. See Estes v.State of Texas, 381 U.S. 532, 542-32 (1965) (" It is true that in most cases involving claims of due process deprivations we require a showing of identifiable prejudice to the accused. Nevertheless, sometimes the procedure employed by the State involves such a probability that prejudice will result that it is deemed inherently lacking in due process.); U.S. v. King, 593 F.2d 269, 271 (7th Cir. 1979) ('Thus Marion makes clear that proof of prejudice is generally necessary but not sufficient element of a due process claim, and the due process inquiry must consider the reasons for the delay as well as the prejudice to the accused.")(quoting United States v. Lovasco, 431 U.S. 783, 790 (1997); U.S. v. Ray, 578 F.3d 184 (2009 WL 2616247 at *12 (2nd Cir. Aug. 27, 2009) ( showing of prejudice as to the due process violation as a result of the sentencing delay.)

Here, the petitioner's appeal was denied on October 26, 2012, which may have been as much as four months late. However, the regulations governing inmate grievances and appeals expressly address the consequences of an untimely response by the Central Office – an untimely response is deemed a denial of the appeal. See 28 C.F.R. § 542.18 ("If the inmate does not receive a response within the time allotted for reply, including extension, the inmate may consider the absence of a response to be a denial at that level.") Therefore, whether the petitioner's appeal was denied in substance by the Central Office or by failure of the Central Office to timely respond to the appeal, the outcome is the same – it is denied. Accordingly, to petitioner cannot establish prejudice where the decision is the same whether timely or not, and no other harm was suffered by the delay.

**B. The Petitioner Received Due Process Afforded Pursuant to Wolff**

Prison disciplinary proceedings are not criminal prosecutions, and prisoners do not enjoy "the full panoply of due process rights due a defendant in such [criminal] proceedings. Wolff v. McDonnell, 418 U.S. 539, 556 (1974). Where, as here, a prison disciplinary hearing may result in

the loss of good time credit, Wolff holds that due process requires the following:

1. giving the prisoner written notice of the charges at least 24 hours before he appears for his disciplinary hearing;

2. providing the prisoner a written statement by the fact finders as to the evidence relied on and reasons for the disciplinary action;

3. allowing the prisoner to call witnesses and present documentary evidence in his defense, when permitting him to do so will not be an undue hazard to institutional safety or correctional goals;

4. permitting the prisoner the aid of a fellow prisoner, or if that is forbidden, aid from staff or a competent inmate designated by staff, if the prisoner is illiterate or the complexity of the issue makes it unlikely that the prisoner will be able to collect and present the evidence necessary for an adequate comprehension of the case; and

5. providing impartial fact finders.

Id. at 564-571. The information before the Court reveals that the petitioner was provided due process as contemplated by Wolff.

First, the petitioner received written notice of the charges at least 24 hours in advance of the DHO hearing. More particularly, the petitioner received a copy of the incident report on December 12, 2011, and the DHO hearing was on December 21, 2011. (Docs.10-5, 10-2, 10-3).

Second, the petitioner was provided a written statement by the DHO as to the evidence relied on and the reasons for the disciplinary action. The DHO report, dated December 21, 2011, notes the specific evidence relied upon to support the finding that the petitioner willfully violated Code 112, Use of any narcotic. In addition, the report explains the reason for the disciplinary action. More

9

specifically, the report states that

> "[t]he use of with illegal drugs as documented in this incident
> cannot be tolerated because the facts of these drugs could lead
> to others serious offenses. It has been proven that inmates
> under the influence of drugs poses a serious management
>
> problems and may lead to disruptive behavior. This type of
> behavior disrupts the orderly running of the institution and
> the staff's of ability to perform their assigned duties. This
> type of action is not acceptable and if allowed to
> continue uncorrected, tends to encourage other inmates
> to participate in a same type of behavior.

(Docs. 10-2, 10-3)

Third, the petitioner was advised of his right to call witnesses and present documentary evidence. He chose not to exercise those rights. (Docs. 10-2, 10-3)

Fourth, the petitioner was advised of his right to staff representation but declined said right, and finally, the petitioner was provided an impartial decision-maker. In accordance with BOP regulations, the DHO did not act as the reporting official, investigating officer, UDC member, or witness and did not play a role in referring the charges.[3]

Not only was the petitioner provided all the due process rights required by Wolff, the findings made by the DHO are sufficient to support the finding that the petitioner violated Prohibited Act Code 297. The Supreme Court held in Superintendent, Mass. Corr. Inst., Walpole v. Hill, 472 U.S. 445, 455 (1985) that "[t]he requirements of due process are satisfied if some evidence supports the decision by the prison disciplinary board to revoke good time credits." The Supreme Court further stated:

> This standard is met if "there was some evidence from which the conclusion of the administrative tribunal could be deduced...." Ascertaining whether this standard

---

[3] See 28 C.F.R. § 541.16(b).

is satisfied does not require examination of the entire record, independent assessment of the credibility of the witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board.

In reaching his decision, the DHO considered the reporting officer's statements contained in the Incident Report[4] as well as the National Toxicology Report. After considering all of the evidence the DHO found that the petitioner had violated Code 112. So long as there is evidence to support the DHO's determination, it must stand. See Superintendent at 455-56. Here, the testimony and documents considered by the DHO clearly provided "some evidence" from which a rational conclusion could be drawn that the petitioner committed the act as charged.

## VI. **RECOMMENDATION**

Based on the foregoing, the undersigned recommends that respondent's Motion to Dismiss, or in the Alternative, for Summary Judgement (Doc. 9) be **GRANTED**, and the petitioner's §2241 petition be **DENIED and DISMISSED WITH PREJUDICE**. In addition, to the extent that Doc. 14 can be interpreted as a Amended Petition for relief, the same should be **DENIED AND DISMISSED WITH PREJUDICE.**

Within fourteen (14) days after being served with a copy of this Recommendation, any party may file with the Clerk of the Court, written objections identifying the portions of the Recommendation to which objections are made, and the basis for such objections. A copy of such

---

[4]Specifically, the reporting officer's Incident Report stated the following:
"On December 12, 2011 at approximately 12:30 pm the SIS office received a positive urinalysis result from the National Toxicology Laboratories on inmate Boston, Ivan #78886-053 specimen number #B0001110054. Inmate Boston, Ivan #78886-053 provided a urine sample on December 7, 2011 at approximately 1:24 pm, in which tested positive for THC METABOLITE (MARIJUANA). Per verification by the staff pharmacist LCDR E. Argiropoulus, inmate Boston, Ivan #78886-053 is not on any prescribed medication that would result in a positive urinalysis." (Doc. 10-4).

objections should also be submitted to the Honorable John Preston Bailey, United States District Judge. Failure to timely file objections to the Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk of the Court is directed to mail a copy of this Report and Recommendation to the *pro se* petitioner by certified mail, return receipt requested, to his last known address as reflected on the docket sheet. The Clerk of the Court is further directed to prove a copy to all counsel of record, as applicable, as provided in the Administrative Procedures for Electronic case Filing in the United States District Court for the Northern District of West Virginia.

DATED: Febraury 26, 2013

*John S. Kaull*
JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE