# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
# ELKINS

IVAN BOSTON,

    Petitioner,

v.                                                      Civil Action No. 2:12-CV-75
                                                            (Bailey)

RUSSELL A. PERDUE,

    Respondent.

## ORDER ADOPTING REPORT AND RECOMMENDATION

On this day, the above-styled matter came before this Court for consideration of the Report and Recommendation of the United States Magistrate Judge John S. Kaull [Doc. 16]. Pursuant to this Court's Local Rules, this action was referred to Magistrate Judge Kaull for submission of a proposed report and recommendation ("R&R"). Magistrate Judge Kaull filed his R&R on February 27, 2013 [Doc. 16]. In that filing, the magistrate judge recommended that this Court grant Respondent's Motion to Dismiss or, in the Alternative, for Summary Judgment [Doc. 9], deny and dismiss with prejudice the petitioner's Application for Habeas Corpus Pursuant to 28 U.S.C. § 2241 [Doc. 1; Doc. 6], and deny and dismiss with prejudice the petitioner's January 4, 2013, filing [Doc. 14], to the extent that it can be interpreted as an Amended Petition [Doc. 16 at 11].

Pursuant to 28 U.S.C. § 636(b)(1)(c), this Court is required to make a *de novo* review of those portions of the magistrate judge's findings to which objection is made. However, the Court is not required to review, under a *de novo* or any other standard, the factual or legal conclusions of the magistrate judge as to those portions of the findings or recommendations to which no objections are addressed. **Thomas v. Arn**, 474 U.S. 140, 150 (1985). In addition, failure to file timely objections constitutes a waiver of *de novo*

review and the right to appeal this Court's Order. 28 U.S.C. § 636(b)(1); **Snyder v. Ridenour**, 889 F.2d 1363, 1366 (4th Cir. 1989); **United States v. Schronce**, 727 F.2d 91, 94 (4th Cir. 1984). Here, objections to Magistrate Judge Kaull's R&R were due within fourteen (14) days of receipt, pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure. The docket sheet reflects that service of the R&R was accepted on February 28, 2013 [Doc. 17]. Although the petitioner's objections were not docketed until March 20, 2013, the petitioner indicates that he placed his objections in the prison mailing system on March 13, 2013 [Doc. 18 at 7]. As such, this Court will construe the petitioner's objections as timely. *See* **Houston v. Lack**, 487 U.S. 266, 276 (1988) (finding that a document is considered filed with the court by a *pro se* prisoner when that prisoner "deliver[s] it to the prison authorities for forwarding to the court clerk"). Accordingly, this Court will review the portions of the R&R to which objection was made under a *de novo* standard of review. The remaining portions of the R&R will be reviewed for clear error.

## I. Factual and Procedural History

In the United States District Court for the Eastern District of New York ("E.D.N.Y."), a jury found the petitioner guilty of being a felon in possession of a firearm on September 14, 2011 [E.D.N.Y. Case No. 1:11-CR-107 Doc. 50]. On May 10, 2012, the petitioner was sentenced to 120 months of incarceration to be followed by three years of supervised release [E.D.N.Y. Case No. 1:11-CR-107 Doc. 78 at 2-3]. His judgment order was entered on June 20, 2012 [E.D.N.Y. Case No. 1:11-CR-107 Doc. 78]. This proceeding is before the undersigned because the petitioner is currently being housed at F.C.I. Gilmer [*See* Bureau of Prisons ("BOP") website for the petitioner's current designation to F.C.I. Gilmer].

On December 7, 2011, the petitioner provided a urine sample to prison officials while housed at the Metropolitan Detention Center in Brooklyn, New York [Doc. 10-2 at 1-2; Doc. 10-3 at 1-2; Doc. 10-7 at 1]. On December 12, 2011,[1] National Toxicology Laboratories provided the Special Investigative Supervisor ("SIS") Office with the results of the urine test, which indicated that the petitioner tested positive for marijuana [Doc. 10-3 at 2; Doc. 10-7 at 2; Doc. 10-8 at 1]. The Bureau of Prisons ("BOP") confirmed that the petitioner was not on any prescribed medication at the time he provided the urine sample that would result in a positive test result for marijuana [Doc. 10-2 at 2; Doc. 10-3 at 2; Doc. 10-4 at 1; Doc. 10-7 at 3].

Also on December 12, 2011, the petitioner was provided written notice of the charge and advised of his rights during the disciplinary process [Doc. 10-2 at 1; Doc. 10-3 at 1; Doc. 10-4 at 1-2]. At that time, the petitioner confirmed that the signature on the chain of custody form was indeed his signature [Doc. 10-4 at 2; Doc. 10-7 at 1]. On December 15, 2011, a Unit Discipline Committee ("UDC") Hearing was held [Doc. 10-4 at 1]. At this hearing, the petitioner made no comment [*Id.*]. The UDC decided to refer the matter to a Disciplinary Hearing Officer ("DHO") [*Id.*]. On the same day, the petitioner was advised that a DHO hearing would take place at the next available date [Doc. 10-2 at 1; Doc. 10-3 at 1; Doc. 10-5 at 1]. The petitioner stated that he did not wish to have a staff representative at the hearing or to call witnesses at the hearing [Doc. 10-5 at 1]. At this time, the petitioner was also informed of his rights regarding the DHO hearing [Doc. 10-6 at 1].

On December 21, 2011, the DHO conducted a hearing, at which the petitioner

---

[1]This date was originally reported to the petitioner as December 8, 2011 [*See* Doc. 10-2 at 2]. However, this date was later corrected to reflect that the test results were received on December 12, 2011 [*See* Doc. 10-3 at 2].

3

admitted to being around marijuana [Doc. 10-2 at 2; Doc. 10-3 at 2]. The DHO concluded that the petitioner committed the prohibited act of use of a narcotic [Doc. 10-2 at 2-3; Doc. 10-3 at 2-3]. Petitioner lost forty days of good conduct time as a result of the disciplinary action [Doc. 10-1 at 1; Doc. 10-2 at 2; Doc. 10-3 at 2]. In addition, the petitioner received 120 days of disciplinary segregation, a one-year loss of visits and commissary privileges, and a one-year time period with visits with immediate family only to follow his suspension [Doc. 10-2 at 2, 3; Doc. 10-3 at 2, 3].

On January 5, 2012, the written report on the DHO's written decision was delivered to the petitioner on January 5, 2012, which detailed the evidence relied upon and the reasons for the sanctions imposed [Doc. 10-2 at 3].[2] On January 15, 2012, the petitioner filed a Regional Administrative Remedy Appeal regarding the December 21, 2011, decision [Doc. 10-8 at 3; Doc. 10- at 2]. On February 17, 2012, the petitioner received the response to his appeal from the Regional Director [Doc. 10-8 at 1-2; Doc. 10-9 at 2]. In this response, the petitioner's appeal was denied [Doc. 10-8 at 1; Doc. 10-9 at 2]. On March 19, 2012, the Central Office received the petitioner's appeal of the Regional Director's decision [Doc. 10-9 at 3; Doc. 10-10 at 2]. On October 26, 2012, the Central Office denied the petitioner's appeal of the Regional Director's decision and "concluded the DHO's consideration of all relevant evidence was appropriate to render the decision" [Doc. 10-9 at 3; Doc. 10-10 at 1].

---

[2] An amended report was delivered to the petitioner on December 6, 2012 [Doc. 10-3 at 3]. This amended report was issued by the DHO who oversaw the December 21, 2011, hearing "to correct a typographical error" on the original report, which reflected an incorrect date and time for the receipt of the test results on the petitioner's December 7, 2011, urine sample [Doc. 10-11 at 1]. The DHO stated that "[t]he amendment did not change [his] finding that inmate Boston had committed the prohibited act of Use of Any Narcotic" [*Id.*].

4

On November 13, 2012, the petitioner filed an Application for Habeas Corpus Pursuant to 28 U.S.C. § 2241 [Doc. 1]; the petitioner later submitted the approved § 2241 form [Doc. 6] on November 29, 2012. In his petition, the petitioner claims that his due process rights were violated when he did not receive a timely response[3] from the Bureau of Prisons Central Office on his administrative remedy request [Doc. 1 at 4-6; Doc. 6 at 5; Doc. 6-1 at 4-6]. For relief, the petitioner requests this Court to "expunge the record of the petitioner and grant restoration of his good time Credit, Commissary and Visitation Privileges in full immediately" [Doc. 6 at 8; *see also* Doc. 1 at 6; Doc. 6-1 at 6].

On December 13, 2012, the respondent filed its Motion to Dismiss or, in the Alternative, For Summary Judgment [Doc. 9] and Memorandum in Support thereof [Doc. 10]. In its motion to dismiss, the respondent argues that the petitioner has failed to state a claim upon which relief can be granted [Doc. 9 at 1] because there is no due process right to an administrative remedy program [Doc. 10 at 9-10] and the petitioner received the full due process rights afforded to an individual at risk of losing good time credit [*Id.* at 10-12]. On December 14, 2012, the petitioner filed a document informing this Court that he received the untimely final order from the Central Office regarding his appeal in November 2012 [Doc. 11 at 1]. The petitioner argues that this late response "is a direct violation of the administrative Procedure and [his] due Process Rights because such appeal was due a response by May 18th, 2012, no later than [*sic*]" [*Id.*]. On January 4, 2013, the petitioner again filed the same document [Doc. 14]. On January 7, 2013, the petitioner filed his

---

[3]In his November 13, 2012, § 2241 petition, the petitioner states that he never received a response from the Central Office [Doc. 1 at 3; *See also* Doc. 6 at 5]. In later filings by the petitioner, he states that he finally received a late response from the Central Office in November 2012 [Docs. 11 and 14].

response in opposition to the respondent's motion to dismiss [Doc. 15]. The petitioner argues that his *pro se* filing should not be dismissed for failure to state a claim because he properly exhausted his administrative remedies, but the Central Office failed to provide a timely response to his appeal, which the petitioner argues amounts to default judgment in his favor [*Id.* at 2].

On February 27, 2013, the magistrate judge filed his R&R [Doc. 16]. In the R&R, the magistrate judge concluded that (1) the petitioner received the due process rights afforded by ***Wolff***[4] [*Id.* at 9-10], (2) the findings made by the DHO are sufficient to support the DHO's determination that the petitioner committed the prohibited act of use of any narcotic [*Id.* at 10-11], and (3) the petitioner experienced no harm from the delayed ruling by the Central Office [*Id.* at 8]. As such, the magistrate judge recommended that this Court grant Respondent's Motion to Dismiss or, in the Alternative, for Summary Judgment [Doc. 9], deny and dismiss with prejudice the petitioner's Application for Habeas Corpus Pursuant to 28 U.S.C. § 2241 [Doc. 1; Doc. 6], and deny and dismiss with prejudice the petitioner's January 4, 2013, filing [Doc. 14], to the extent that it can be interpreted as an Amended Petition [Doc. 16 at 11].

On March 20, the petitioner filed his Response and Objections [Doc. 18] to the magistrate judge's R&R. In his objections, the petitioner argues that (1) the loss of good time credit is a protected liberty interest [*Id.* at 4-5], (2) the DHO's determination was not supported by evidence in the record [*Id.* at 5], and (3) he did not receive the minimal protections afforded under ***Wolff*** because "evidence relied upon was evidence that was

---

[4] ***Wolff v. McDonnell***, 418 U.S. 539 (1974).

6

never indicated in the report" [*Id.* at 5-6]. In addition, the petitioner argues that he has demonstrated the following prejudice: (1) the denial of good time credit; (2) the loss of visitation with family, including time with his stepson before his stepson passed away; and (3) "the suffering of being in segregation under false evidence" [*Id.* at 6].

## II.  Applicable Law

### A.  Motion to Dismiss

A complaint must be dismissed if it does not allege "enough facts to state a claim to relief that is plausible on its face." **Bell Atl. Corp. v. Twombly**, 550 U.S. 544, 547 (2007).  In other words, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim" to survive a motion to dismiss for failure to state a claim.  **Bass v. E.I. Dupont de Nemours & Co.**, 324 F.3d 761, 765 (4th Cir. 2003)(citing **Dickson v. Microsoft Corp.**, 309 F.3d 193, 213 (4th Cir. 2002)); *see also* **Iodice v. United States**, 289 F.3d 270, 281 (4th Cir. 2002).  In so doing, the complaint must meet a "plausibility" standard such that the "the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." **Ashcroft v. Iqbal**, 556 U.S. 662, 663 (2009) (relying on **Twombly**, 550 U.S. at 556).

When reviewing a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must assume all of the allegations to be true, resolve all doubts and inferences in favor of the plaintiff, and view the allegations in the light most favorable to the plaintiff. **Edwards v. City of Goldsboro,** 178 F.3d 231, 243-44 (4th Cir. 1999).  When rendering its decision, the Court should consider only the allegations contained in the Complaint, the exhibits to the Complaint, matters of public record, and other similar materials that are subject to judicial notice. **Anheuser-Busch, Inc. v.**

*Schmoke,* 63 F.3d 1305, 1312 (4th Cir. 1995)(*relying on* 5B CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1357*)(*3d ed. 2004).

### B. Motion for Summary Judgment

Rule 56 of the Federal Rules of Civil Procedure governs summary judgment. *See* FED. R. CIV. P. 56. The Supreme Court of the United States and the Fourth Circuit Court of Appeals ("Fourth Circuit") have recognized the application of Rule 56 in habeas cases. *See* **Blackledge v. Allison**, 431 U.S. 63, 80-81 (1977); and **Maynard v. Dixon**, 943 F.2d 407 (4th Cir. 1991). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." **Celotex Corp. v. Catrett**, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56(c). A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." **Anderson v. Liberty Lobby, Inc.**, 477 U.S. 242, 248 (1986). Thus, the Court must conduct "the threshold inquiry of determining whether there is the need for a trial- whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." **Anderson**, 477 U.S. at 250.

The party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts." **Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.**, 475 U.S. 574, 586 (1986). That is, once the movant has met its burden to show absence of material fact, the party opposing summary judgment must then come forward with affidavits or other evidence demonstrating there is indeed a genuine issue for trial. Fed. R. Civ. P. 56(c); **Celotex Corp.**, 477 U.S. at 323-25; **Anderson**, 477

U.S. at 248. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249 (citations omitted).

## C. Administrative Remedies

The BOP has a four-step administrative remedy process, progressing from the BP-8 level to the BP-11 level. *See* 28 C.F.R. §§ 542.13 - 542.15. The first step is an attempted informal resolution. 28 C.F.R. § 542.13. If this does not provide the inmate with a satisfactory result, then the second step is to file a formal, written complaint on the BP-9 form within 20 days after the date of the incident of which the inmate is complaining. 28 C.F.R. § 542.14. If the prisoner is not satisfied with the response from the warden at this level, then the third step is to complete a BP-10 appeal to the "appropriate Regional Director within 20 calendar days of the date the Warden signed the response." 28 C.F.R. § 542.15. In the event that the prisoner is not satisfied with the Regional Director's response, then the fourth step is to submit a BP-11 appeal to the "General Counsel within 30 calendar days of the date the Regional Director signed the response." *Id.* These deadlines may be extended where an inmate demonstrates a valid reason for delay as detailed in section 542.14(b). *Id.*[5]

---

[5]Section 542.14(b) provides the following:
Where the inmate demonstrates a valid reason for delay, an extension in filing time may be allowed. In general, valid reason for delay means a situation which prevented the inmate from submitting the request within the established time frame. Valid reasons for delay include the following: an extended period in-transit during which the inmate was separated from documents needed to prepare the Request or Appeal; an extended period of time during which the inmate was physically incapable of preparing a Request or Appeal; an unusually long period taken for informal resolution attempts; indication by an inmate, verified by staff, that a response to the inmate's request for copies of dispositions . . . was delayed.
28 C.F.R. § 542.14(b).

Pursuant to 28 C.F.R. § 542.18, the General Counsel Office has forty calendar days to respond to a prisoner's appeal. "If the time period for response to a Request or Appeal is insufficient to make an appropriate decision, the time for response may be extended once by . . . 20 days at the Central Office level." *Id.* If the prisoner does not receive a response in the allotted time for a reply to the request or appeal, including any relevant extension, "the inmate may consider the absence of a response to be a denial at that level." *Id.* "[T]here is no constitutional right to participate in grievance proceedings." **Adams v. Rice**, 40 F.3d 72, 75 (4th Cir. 1994) (internal citations omitted). As such, a timely response to an appeal to the Central Office is not a constitutionally-protected liberty interest.

Where an inmate is at risk of potentially losing good time credit in a prison disciplinary proceeding, a prisoner is "constitutionally entitled to the procedures enumerated in **Wolff v. McDonnell** and no more." **Rojos v. Driver**, 2007 WL 2789471, * 4 (N.D.W.Va. Sept. 27, 2007) (referring to **Wolff v. McDonnell**, 418 U.S. 539 (1974)), *aff'd*, **Rojos v. Driver**, 2008 WL 553108 (4th Cir. Feb. 29, 2008) (unpublished). Pursuant to **Wolff**, "[p]rison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." 418 U.S. at 556. However, prisoners are afforded some limited due process rights when a hearing may result in the loss of good time credit: (1) written notice of the charges at least 24 hours prior to a hearing on the charges; (2) the right to call witnesses and present evidence in his or her defense, so long as doing so would not be an undue hazard to institutional safety or correctional goals; (3) the right to seek the aid of another prisoner or, if that is forbidden, help from a staff member if the prisoner is illiterate or the issue is so complex that it is not likely that the prisoner can collect and present the necessary evidence for an adequate

10

comprehension of the case; (4) impartial fact-finders; and (5) a written statement by the fact-finder(s) explaining the evidence on which a disciplinary decision is made and the reasons for the disciplinary action. *Id.* at 564-71.

### III.  Discussion

In the R&R, the magistrate judge concluded that the petitioner received the due process rights afforded by *Wolff* [6] [Doc. 16 at 9-10], the findings made by the DHO are sufficient to support the DHO's determination that the petitioner committed the prohibited act of use of any narcotic [*Id.* at 10-11], and the petitioner experienced no harm from the delayed ruling by the Central Office [*Id.* at 8]. In his objections, the petitioner argues that the loss of good time credit is a protected liberty interest [Doc. 18 at 4-5], the DHO's determination was not supported by evidence in the record [*Id.* at 5], and he did not receive the minimal protections afforded under *Wolff* because "evidence relied upon was evidence that was never indicated in the report" [*Id.* at 5-6]. In addition, the petitioner argues that he has demonstrated the following prejudice: the denial of good time credit; the loss of visitation with family, including time with his stepson before his stepson passed away; and "the suffering of being in segregation under false evidence" [*Id.* at 6].

### A.  Due Process Rights

In his objections, the petitioner argues that the loss of good time credit is a protected liberty interest [Doc. 18 at 4-5] and he did not receive the minimal protections afforded under *Wolff* because "evidence relied upon was evidence that was never indicated in the report" [*Id.* at 5-6]. This Court agrees with the magistrate judge's conclusion that the

---

[6] ***Wolff v. McDonnell***, 418 U.S. 539 (1974).

petitioner was afforded due process as contemplated by *Wolff*.

The first protection afforded by *Wolff* is that the inmate receive written notice of the charges at least 24 hours prior to a hearing on the charges. 418 U.S. at 564. In this case, the petitioner was given written notice of the charges against him more than 24 hours prior to a hearing on the charges. The petitioner was provided a written notice of the charges against him on December 12, 2011, which was three days before the UDC hearing on the charges and nine days before the DHO hearing on the charges [Doc. 10-2 at 1-2; Doc. 10-4 at 1-2; Doc. 10-5 at 1]. As such, the petitioner was properly afforded the first protection under *Wolff*.

The second protection afforded by *Wolff* is that the inmate be granted the right to call witnesses and present evidence in his or her defense, so long as doing so would not be an undue hazard to institutional safety or correctional goals. 418 U.S. at 566-69. In this case, the petitioner was advised on December 15, 2011, of his right to call witnesses at the DHO hearing; however, he stated that he did not wish to call witnesses [Doc. 10-5 at 1]. Furthermore, the petitioner did not call any witnesses at the December 21, 2011, DHO hearing [Doc. 10-2 at 1-2; Doc. 10-3 at 1-2]. In addition, the petitioner was given the opportunity to present evidence at the DHO hearing [*See* Doc. 10-2 at 1-2; Doc. 10-3 at 1-2]. At the hearing, the petitioner stated that he was around marijuana, but denied the charges [*Id.*]. He did not present any documentary evidence [*Id.*]. As such, the petitioner was afforded the second protection under *Wolff*.

The third protection afforded by *Wolff* is that the inmate be granted the right to seek the aid of another prisoner or, if that is forbidden, help from a staff member if the prisoner is illiterate or the issue is so complex that it is not likely that the prisoner can collect and

12

present the necessary evidence for an adequate comprehension of the case. 418 U.S. at 569-71. In this case, the petitioner was advised on December 15, 2011, of his right to have a staff representative at the DHO hearing; however, he declined having such a staff representative appointed [Doc. 10-5 at 1]. The DHO hearing report further indicates that the petitioner waived his right to a staff representative [Doc. 10-2 at 1-2; Doc. 10-3 at 1-2]. As such, the petitioner was afforded the third protection under *Wolff*.

The fourth protection afforded by *Wolff* is that the inmate be provided with an impartial fact-finder. 418 U.S. at 571. According to the Inmate Discipline Program, "[t]he DHO will be an impartial decision maker who was not a victim, witness, investigator, or otherwise significantly involved in the incident." 28 C.F.R. § 541.8(b) (2011). DHO Daniel Garcia did not act in any role other than the DHO during the investigation or hearing pertaining to the petitioner's charges [*See* Doc. 10-2; *see also* Doc. 10-3]. In addition, in a declaration under penalty of perjury pursuant to 28 U.S.C. § 1746, DHO Garcia stated that he "was not predisposed to finding [the petitioner] guilty" and "acted as an objective and impartial decision-maker" [Doc. 10-11 at 1]. The DHO also declared that "[he] considered the evidence before [him] and based [his] findings on the evidence at hand" [*Id.*]. As such, DHO Garcia was an impartial fact-finder and the petitioner was afforded the fourth protection under *Wolff*.

The fifth and final protection afforded by *Wolff* is that the inmate be provided with a written statement by the fact-finder(s) explaining the evidence on which a disciplinary decision is made and the reasons for the disciplinary action. 418 U.S. at 564-65. In Section V of the DHO Report, the DHO specifically listed the evidence on which he relied in reaching his findings [Doc. 10-2 at 2; Doc. 10-3 at 2]. The DHO stated that his findings

were based upon the following evidence: (1) the written statement of the reporting officer regarding a positive urinalysis result for THC Metabolite (marijuana); (2) the verification that the petitioner was not on any prescribed medication that would result in a positive urinalysis; and (3) the petitioner's statement during the hearing that he was around marijuana [*Id.*]. In Section VII of the DHO Report, the DHO listed the following reasons for the sanctions taken: (1) the use of illegal drugs could lead to other serious offenses; (2) inmates under the influence of drugs pose a serious management problem and may lead to disruptive behavior; (3) disruptive behavior resulting from the use of illegal drugs impedes staff's ability to perform their assigned duties; (4) if the use of illegal drugs is not sanctioned, then other prisoners may be encouraged to participate in the same behavior; (5) the specific sanctions imposed have been proven to be effective in the past in correcting unacceptable behavior; and (6) the sanctions will deter future negative behavior by the petitioner and remind the petitioner that he is expected to follow BOP rules and regulations [*Id.* at 2-3]. As such, the petitioner was provided with a written report detailing the evidence used by the DHO in reaching the decision to impose sanctions on the petitioner as well the reasons supporting the use of the sanctions imposed. Therefore, the petitioner was afforded the fifth protection under *Wolff*. Because the petitioner was afforded all five protections under *Wolff*, this Court hereby **OVERRULES** the petitioner's objection on this issue.

### B. Sufficiency of Evidence in Support of DHO Determination

In his objections, the petitioner argues that the DHO's determination was not supported by evidence in the record [Doc. 18 at 5]. This Court notes that this objection overlaps with the fifth protection afforded by *Wolff* (*i.e.*, a written statement by the fact-

finder(s) explaining the evidence on which a disciplinary decision is made and the reasons for the disciplinary action), which was previously discussed by this Court in Section III.A. of this Order. However, to the extent that the petitioner's objection pertains to the sufficiency of the evidence used in support of the DHO's findings, this Court will address this objection as a separate objection.

The Supreme Court of the United States has held that "the requirements of due process are satisfied if some evidence supports the decision by the prison disciplinary board to revoke good time credits." ***Superintendent, Massachusetts Corr. Inst., Walpole v. Hill***, 472 U.S. 445, 455 (1985). "This standard is met if there was some evidence from which the conclusion of the administrative tribunal could be deduced." ***Id.*** (internal citations omitted). As such, "[t]he relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." ***Id.*** at 455-56 (internal citations omitted).

In this case, the evidence used to support the DHO's determination is sufficient if there is any evidence to support the DHO's findings. The DHO stated in his report that he relied upon the written statement of the reporting officer that the SIS received a positive urinalysis result for THC Metabolite (marijuana) and that the petitioner was not on any prescribed medication that would result in such a positive urinalysis result [Doc. 10-2 at 2; Doc. 10-3 at 2]. The petitioner argues that this evidence was not actually relied upon by the DHO because the original DHO Report contained a typographical error regarding the date the SIS received the positive test result from National Toxicology Laboratories, which was not corrected until December 6, 2012, after he initiated this proceeding. However, the amended report merely corrects the typographical error and does not change any other

15

content of the original DHO Report [*Compare* Doc. 10-2 at 2 *with* Doc. 10-3 at 2]. Furthermore, the underlying incident report to which the DHO referred contained the correct date and time [Doc. 10-4 at 1]. Moreover, this was not the only evidence on which the DHO relied; the DHO also relied upon the test result received from National Toxicology Laboratories as well as the chain of custody form for the urine sample [Doc. 10-2 at 2; Doc. 10-3 at 2]. As such, because there is some evidence to support the DHO's determination that the petitioner committed the prohibited act of use of illegal drugs, there is sufficient evidence to support his determination. *See* **Superintendent, Massachusetts Corr. Inst., Walpole**, 472 U.S. at 455-56. Accordingly, this Court hereby **OVERRULES** the petitioner's objection on this issue.

### C. Alleged Harm

The petitioner objects to the magistrate judge's conclusion that, "even if the failure of the Central Office to respond timely to his appeal triggered protections under the due process clause, the petitioner can show no prejudice as the result of the late response" [Doc. 16 at 7; Doc. 18 at 6].[7] The petitioner argues that he has demonstrated the following prejudice: (1) the denial of good time credit; (2) the loss of visitation with family, including time with his stepson before his stepson passed away; and (3) "the suffering of being in segregation under false evidence" [Doc. 18 at 6]. However, these sanctions were the result of the investigation into the charges against the petitioner and the DHO's determination that

---

[7]In making this conclusion, the magistrate judge noted that "due process claims generally require either that the particular conduct is inherently prejudicial, or that the denial of due process causes actual or identifiable prejudice" [Doc. 16 at 7-8 (citing ***Estes v. State of Texas***, 381 U.S. 532 (1965); ***United States v. King***, 593 F.2d 269 (7th Cir. 1979); and ***United States v. Ray***, 578 F.3d 184 (2d Cir. 2009)].

16

the petitioner committed the prohibited act [Doc. 10-2 at 2; Doc. 10-3 at 2].

As noted by the magistrate judge, the result of the delayed response to his Central Office appeal did not create any prejudice because an untimely response by the Central Office is deemed a denial of the appeal. *See* 28 C.F.R. § 542.18. As such, the petitioner's Central Office appeal was denied either way - either through the lack of a response by the required deadline[8] or the Central Office's written denial on October 26, 2012. Because the result was the same either way, the petitioner was not harmed by the delayed response. Accordingly, this Court hereby **OVERRULES** the petitioner's objection on this issue.

## IV. Conclusion

Upon careful review of the report and recommendation, it is the opinion of this Court that the magistrate judge's Report and Recommendation **[Doc. 16]** should be, and is, hereby **ORDERED ADOPTED** for the reasons more fully stated in the magistrate judge's report. Furthermore, the petitioner's Objections **[Doc. 18]** are **OVERRULED**. Accordingly, Respondent's Motion to Dismiss or, in the Alternative, for Summary Judgment **[Doc. 9]** is hereby **GRANTED**, petitioner's Application for Habeas Corpus Pursuant to 28 U.S.C. § 2241 **[Doc. 1; Doc. 6]** is hereby **DISMISSED WITH PREJUDICE**, and petitioner's January 4, 2013, filing **[Doc. 14]**, to the extent that it can be interpreted as an Amended Petition, is hereby **DISMISSED WITH PREJUDICE**. As such, this **proceeding** is hereby **ORDERED STRICKEN** from the active docket of this Court, and the Clerk is directed to enter a separate judgment in favor of the respondent.

---

[8]The Central Office notified the petitioner that it needed an extension of time to May 18, 2012, to respond to his appeal [Doc. 18-2 at 1]. As such, the appeal was deemed denied pursuant to 28 C.F.R. § 542.18 when the petitioner did not receive a response from the Central Office by this extended deadline.

17

As a final matter, to the extent that the petitioner's § 2241 petition might be construed as attacking his underlying sentence, this Court hereby **DENIES** the petitioner a certificate of appealability, finding that he had failed to make "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

It is so **ORDERED**.

The Clerk is directed to transmit copies of this Order to any counsel of record and to mail a copy to the *pro se* petitioner.

**DATED:** April 11, 2013.

JOHN PRESTON BAILEY
CHIEF UNITED STATES DISTRICT JUDGE